UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHARON L. ANDERSON,

          **Plaintiff,**                       **Case No. 2:14-cv-2167**
                                           **CHIEF JUDGE EDMUND A. SARGUS, JR.**
      **v.**                             **Magistrate Judge Terence P. Kemp**

U.S. BANK NATIONAL ASSOCIATION,

          **Defendant.**

## OPINION AND ORDER

After decades of service, Plaintiff Sharon L. Anderson ("Anderson") was fired by Defendant U.S. Bank National Association ("U.S. Bank"). U.S. Bank claims that she was fired for "gaming" the bank's teller incentive plan. Anderson, by contrast, attributes her discharge to age discrimination. This matter is before the Court on U.S. Bank's Motion for Summary Judgment [ECF No. 20] and Anderson's Motion for Leave to File a Surreply [ECF No. 25]. For the following reasons, both motions are **DENIED.**

## I.    BACKGROUND

### A.    Factual Background

Anderson has worked in the banking industry since 1966. (Pl.'s Dep. at 20–22 [ECF No. 21].) Aside from a 5-year gap from 1971 to 1976 when Anderson took time off to care for her children, Anderson was employed by U.S. Bank's predecessors in interest from 1966 to 1994. (*Id.*) Anderson worked for U.S. Bank as a teller or teller supervisor from 1994 until her termination in May 2014. (*Id.*) During her time at U.S. Bank, Anderson worked at the Cambridge East branch. (*Id.* at 20.)

### 1.    *Work Performance and Policies*

Over the course of her employment at U.S. Bank, Anderson received good performance reviews. (Pl.'s Dep. at 25–27.) She received at least a "solid performance" rating (a "3" in a scale of 1 to 5 in which 1 is the best rating) during her last 11 years at U.S. Bank. (Doutt Dep. at Exs. 3–11, 16–17 [ECF No. 22-1].) Anderson's performance had a weak spot though: she typically failed to meet her referral goal. (Pl.'s Dep. at 25–27.)

U.S. Bank encourages its tellers to accumulate "referrals" through an incentive plan. (Pl.'s Dep. at Ex. 13.) A teller is credited with a referral when she has spoken directly to a customer and the conversation leads to the customer opening a qualifying product. (*Id.* at Ex. 14.) A full-time teller, such as Anderson, qualifies to receive incentive pay if she accumulates at least 12 referrals in a quarter. (*Id.* at Ex. 13.) Tellers can qualify to receive a referral bonus if they accumulate at least 24 referrals in a quarter. (*Id.*)

U.S. Bank's Code of Ethics and Business Conduct ("Code of Ethics") prohibits tellers from "gaming" the incentive system:

> **3.3.3 Responsible Sales Activities**
> At U.S. Bank, we take pride in providing our customers with the best products and services available to meet their needs. Your sales always must be based on customer needs or requests—they should not be the result of efforts to promote products or services that meet incentive program goals. Incentive gaming is strictly prohibited. You may not manipulate records, open bogus accounts, slam products, falsify applications or skew results in any way for the benefit of yourself or other employees.

(Pl.'s Dep. at Ex. 11, § 3.3.3.) An employee who violates the Code of Ethics may face discipline "up to and including termination." (*Id.* at Ex. 11.) The U.S. Bank Business Line Incentive Plan Provisions ("Plan Provisions") also address ethics violations:

> If a participant fails to comply with the U.S. Bank Code of Ethics or the provisions included in this Provisions Document or violates any other Company policy, the employee may be ineligible to participate in this Plan in part or in full,

2

at management's discretion and subject to Incentive Oversight Committee
approval.

(*Id.* at Ex. 12.) The Plan Provisions clarify, however, that

> [p]articipation in a Plan . . . shall not affect the right of [U.S. Bank] to discharge,
> transfer, or change the position of a participant. Except where prohibited by law,
> the employment of any person participating in the Plan may be terminated at any
> time, and no promise or representation is made regarding continued employment
> because of participation in the Plan.

(*Id.*) Independent of the Code of Ethics and Plan Provisions, U.S. Bank also has a progressive

discipline policy. (*See* Doutt Dep. at 13.) Under that policy, employees are disciplined in several

steps. (*Id.*) The steps include a verbal warning, a written warning, and a final notice. (*Id.*)

## 2. *Retirement Comments*

Anderson's bosses regularly asked her when she intended to retire. They asked Anderson

about retirement so frequently that she felt "harassed." (Pl.'s Dep. at 77.) It felt as though U.S.

Bank wanted her to "go out the door right now." (*Id.* at 89.)

Anderson contends that in the three years leading up to her termination, District Manager

Dennis Doutt asked her about her retirement plans every time he visited the Cambridge East

branch. (Pl.'s Dep. at 88.) Doutt visited the branch once every month or two. (*Id.*) Every time

Doutt asked her about retirement, Anderson explained that she was both unready to retire and

financially unable to do so. (*Id.* at 86, 88.) In his deposition, Doutt initially acknowledged that

"[t]here was always a discussion about [Anderson's] retirement." (Doutt Dep. at 77.) Doutt later

attempted to narrow that statement; he asserts that he "often" had retirement discussions with

Anderson but that Anderson initiated most of those conversations. (*Id.* at 77–81.)

Branch Manager Bryant Ficken, who left U.S. Bank in March 2014, also spoke with

Anderson about retirement. (Doutt Dep. at Ex. 32; Pl.'s Dep. at 80–85.) At each monthly

performance meeting and yearly review from 2009 through early 2014, Ficken asked Anderson

3

when she intended to retire. (Doutt Dep. at Ex. 32; Pl.'s Dep. at 84.) Anderson regularly pointed

out that she was not ready to retire and that she could not afford to retire. (Pl.'s Dep. at 81–83.)

She assured Ficken that she would tell him when she planned to retire. (*Id.* at 83.) Anderson

avers that she never initiated these retirement discussions. (*Id.* at 82–83.) In addition to asking

Anderson about retirement, Ficken also made a comment once about the age of his employees.

He opined that training tellers would not be too hard if he had "a younger employee base." (*Id.* at

36–37.)

On one occasion, U.S. Bank's Regional President, Jeff East, also asked Anderson when

she planned to retire. (Pl.'s Dep. at 90–91.) Anderson told East that she could not afford

retirement. (*Id.* at 91.)

### 3. *The Investigation*

In late April 2014, Doutt and Human Resources Generalist Michael Hamilton began

investigating allegations of referral sharing at U.S. Bank's Cambridge East branch. (Hamilton

Dep. at 11 [ECF No. 19].) Referral sharing is a potential violation of the Incentive Plan

Provisions and Code of Ethics where tellers direct incoming customers to co-workers who have

not yet met the threshold number of referrals for incentive pay or referral bonus eligibility. (*Id.* at

12–13.) Doutt and Hamilton spoke with each of the employees at Cambridge East. (Doutt Dep. at

23.) They found that all of the tellers were sharing referrals. (Doutt Dep. at 23–24.) Aside from

Anderson and Martha Swank (a 64-year-old Teller 2) though, none of the tellers was disciplined.

(*Id.* at 24.) The other tellers were significantly younger than Anderson and Swank; the oldest was

31. (*Id.* at Ex. 32.)

During their investigation at Cambridge East, Doutt and Hamilton also looked into a

related allegation: that Anderson had improperly credited herself with a referral of a customer—

4

Kayla Jones—who purportedly never spoke with Anderson. (Doutt Dep. at 24–25; Hamilton Dep. at 14.) Jones came into the branch to speak with her uncle, a banker, about opening up a checking account. (Doutt Dep. at 25.) In a telephone conversation with Doutt, Jones later confirmed that she never spoke with Anderson. (Hamilton Dep. at 16–17, 19–20.)

Doutt and Hamilton met with Anderson twice. (Doutt Dep. at 26.) During the first meeting, they asked Anderson about her interactions with Jones. (*Id.* at 26.) Anderson stated that she did not remember Jones. (Pl.'s Dep. at 64.) She explained though that she may have inadvertently placed Jones' transaction documents in her referral pile and, thus, accidentally entered Jones as a referral. (*Id.* at 64–65.) She also explained that she would never have knowingly listed a customer as a referral if she had not talked with that customer. (*Id.* at 66.) On May 12, 2014, Doutt and Hamilton again met with Anderson. (*Id.* at 76–77.) They asked if Anderson could remember anything else about her interactions with Jones. (*Id.*) Anderson said that she could not. (*Id.*) She reiterated that she did not remember speaking with Jones and that she must have erroneously entered the referral. (*Id.*) Doutt and Hamilton listened to these explanations and then informed Anderson that she was fired. (*Id.* at 77.)

Anderson was 65 years old and a Teller 2 when she was fired. (Doutt Dep. at Ex. 2; Pl.'s Dep. at 8.) Swank, Anderson's 64-year-old co-worker and fellow Teller 2, was fired around the same time as Anderson and, purportedly, for the same type of referral-related misconduct. (*See* Doutt Dep. at 24, Exs. 31, 32; Swank Aff. at PageID 555 [ECF No. 23-1].) U.S. Bank hired three new tellers in June and July 2014. (Doutt Dep. at Ex. 32.) It hired a 47-year-old Teller 2,[1] a 19-

---

[1] This teller's date of birth is listed on a spreadsheet produced by U.S. Bank. (*See* Doutt Dep. at Ex. 32.) One of the numbers is blurred though. The teller's birthday seems to be 12/15/1966. Doutt, in fact, opined that the date is 1966. (*Id.* at 91.) The date, however, could be 12/15/1956, meaning that the teller was 57 when she was hired. Given that the Court views all evidence in the light most favorable to the nonmoving party for purposes of a motion for summary judgment, the Court will assume that the teller was born in 1966 and was, thus, 47 when U.S. Bank hired her.

year-old Teller 1, and an 18-year-old Teller 1. (*Id.*) U.S. Bank did not hire another Teller 2 until

January 2015; that teller was 44. (*Id.*)

Doutt and Hamilton purportedly fired Anderson because she gamed the incentive system

in violation of § 3.3.3 of the Code of Ethics by "manipulat[ing] records." (*See* Doutt Dep. at 17–

19; Hamilton Dep. at 30–31.) In their depositions, Doutt and Hamilton initially suggested that

there was no option other than termination for a violation of § 3.3.3. (Doutt Dep. at 20; Hamilton

Dep. at 17.) They later acknowledged though that other options may have been available. (Doutt

Dep. at 74–76; Hamilton Dep. at 39–45.) And although both Doutt and Hamilton insist that

Anderson violated § 3.3.3, each offers a different interpretation of that section. Doutt has

indicated that Anderson needed to manipulate records with the intention of gaming the incentive

system in order to violate § 3.3.3. (Doutt Dep. at 68–69.) Hamilton, by contrast, has indicated

that Anderson violated § 3.3.3 irrespective of whether she intended to game the incentive system.

(Hamilton Dep. at 20–22, 32–34.)

In their investigation of Anderson's alleged incentive gaming, Doutt and Hamilton did

not explore a number of issues that, according to Anderson, would have undermined the

contention that she intentionally entered a non-existent referral. For one, Doutt and Hamilton did

not review their records to determine whether Anderson was close to meeting the minimum

referral threshold for receiving incentive pay. (Doutt Dep. at 60–62; Hamilton Dep. at 28.) When

Anderson was terminated, there were slightly over two weeks left in the quarter. (Mem. in Opp'n

to Mot. for Summ. J. at  8 [ECF No. 23].) Anderson had only 5 referrals when she was

terminated; as a full-time employee, she would have needed to accumulate 12 referrals by the

end of those two weeks to become eligible for incentive pay. (*See* Doutt Dep. at Exs. 27, 29.)

Second, Doutt and Hamilton did not review the records revealing that Anderson never received a

referral bonus—which is available to tellers who accumulate at least 24 referrals in a quarter. (Doutt Dep. at 62–66; Hamilton Dep. at 37.) Third, Doutt and Hamilton did not review Anderson's annual performance reviews, which consistently indicated that she needed to obtain more referrals. (*See* Hamilton Dep. at 29.) And Fourth, Doutt and Hamilton did not contact any of Anderson's past referrals to determine if she had ever previously entered a false referral. (*See* Doutt Dep. at 34–35; Hamilton Dep. at 39.)

**B.      Procedural Background**

Anderson initiated this case on November 3, 2014. (*See* Compl. at 1 [ECF No. 1].) She brings two claims against U.S. Bank: (1) age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") and (2) age discrimination under Ohio Revised Code Chapter 4112. (*Id.* at 5–8.)

U.S. Bank filed its Motion for Summary Judgment [ECF No. 20] on January 11, 2016. That Motion is fully briefed. Anderson, however, contending that U.S. Bank raised new arguments in its Reply, seeks leave to file a surreply. (Mot. for Leave to File Surreply at 1–2 [ECF No. 25].) Both motions are now ripe for review.

The Court will first address Anderson's Motion for Leave to File a Surreply. The Court will then consider U.S. Bank's Motion for Summary Judgment.[2]

**II.      Motion for Leave to File a Surreply**

Anderson seeks leave to file a surreply so that she can address U.S. Bank's purported new argument: that Anderson has failed to submit evidence establishing that she "was replaced by someone outside the protected class, or someone who was substantially younger than her."

---

[2] In a pair of footnotes in its Reply brief, U.S. Bank announces that it "has moved to strike" Martha Swank's Affidavit and Brenda Davis' Declaration—two documents attached to Anderson's Memorandum in Opposition. (*See* Reply in Support of Mot. for Summ. J. at 3 n.1, 14 n.4 [ECF No. 24].) Given that U.S. Bank has not actually filed a motion to strike these documents, the Court disregards U.S. Bank's request.

(Mot. for Leave to File Surreply at 2.) For its part, U.S. Bank points out that it addressed the issue of Anderson's alleged younger replacement in response to Anderson raising the younger replacement argument in her Memorandum in Opposition. (Mem. in Opp'n to Mot. for Leave to File Surreply at 3 [ECF No. 26].)

The Southern District of Ohio Civil Local Rules provide for surreplies only "upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Here, U.S. Bank addressed for the first time in its Reply Anderson's argument that she can establish a prima facie case by showing that she was replaced by a younger employee. (*See* Reply in Support of Mot. for Summ. J. at 2–3 [ECF No. 24].) Anderson implies that U.S. Bank should have addressed this argument in its Motion for Summary Judgment rather than in its Reply. But Anderson's contention overlooks the fact that under the *McDonnell Douglas* burden-shifting framework, she—not U.S. Bank—carries the burden of establishing a prima facie case of age discrimination. 411 U.S. 792, 802 (1973). And although U.S. Bank did make one argument as to why Anderson cannot establish her prima facie case—that comments about retirement do not support an inference of discrimination—U.S. Bank had no obligation to anticipate every potential argument that Anderson might have offered in support of her prima facie case. (*See* Mot. for Summ. J. at 5–6 [ECF No. 20].) U.S. Bank has simply utilized its Reply in the manner permitted under the rules: to respond to Anderson's Memorandum in Opposition. *See Egrsco, LLC v. Evans Garment Restoration, LLC*, No. 2:09-cv-358, 2009 WL 3259423, at *3 (S.D. Ohio Oct. 8, 2009). Accordingly, Anderson's Motion for Leave to File a Surreply [ECF No. 25] is denied.

### III.   Motion for Summary Judgment

U.S. Bank argues that it is entitled to summary judgment on Anderson's ADEA and Ohio age discrimination claims. Anderson's claims purportedly fail because (i) Anderson cannot state

a prima facie case of age discrimination, (ii) U.S. Bank has articulated a legitimate,

nondiscriminatory reason for firing Anderson, (iii) Anderson cannot demonstrate that U.S.

Bank's articulated reason for her termination was a pretext for age discrimination, and (iv) even

if U.S. Bank's reason for terminating Anderson had no basis in fact, the honest belief rule

entitles U.S. Bank to summary judgment. (*See* Mot. for Summ. J. at 5–11.) As explained below,

these arguments fail.

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). The movant has the burden of establishing that there are no genuine issues of material fact,

which may be accomplished by demonstrating that the nonmoving party lacks evidence to

support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986);

*Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).

In evaluating a motion for summary judgment, the evidence must be viewed in the light

most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59

(1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, the

existence of a mere scintilla of evidence in support of the nonmoving party's position will not be

sufficient; there must be evidence on which the jury could reasonably find for the nonmoving

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *see Copeland v. Machulis*, 57

F.3d 476, 479 (6th Cir. 1995); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587–88 (1986) (finding reliance upon mere allegations, conjecture, or implausible

inferences to be insufficient to survive summary judgment).

9

**B.**     **Age Discrimination Claims**

Anderson brings age discrimination claims under the ADEA and under Ohio Revised Code Chapter 4112. "The ADEA prohibits an employer from discharging an individual 'because of such individual's age.'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) (quoting 29 U.S.C. § 623(a)(1)). Ohio Revised Code § 4112.14 provides that no employer shall "discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job." O.R.C. § 4112.14(A). Despite slight differences in the wording of the two statutes, age discrimination claims brought under Ohio Revised Code Chapter 4112 are analyzed under the same standards as federal claims brought under the ADEA. *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009).

"'The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Reeves*, 530 U.S. at 153). "A plaintiff 'may establish a violation of the ADEA by either direct or circumstantial evidence.'" *Blizzard*, 698 F.3d at 283 (quoting *Geiger*, 579 F.3d at 620). "Where, as here, the plaintiff fails to present direct evidence of age discrimination, the claim is analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, [411 U.S. 792, 802–05 (1973)]." *Blizzard*, 698 F.3d at 283. Under that framework, once a plaintiff has established a prima facie case of age discrimination, the burden shifts to the defendant employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). At that point, the burden shifts back to plaintiff to demonstrate that the proffered reason was in fact a pretext designed to conceal unlawful discrimination. *Id.*

### 1. *Prima Facie Case*

To establish a prima facie case of age discrimination, a plaintiff must show (1) that she was over 40 years old, (2) that she was qualified for the job in question, (3) that she was subjected to an adverse employment action, and (4) circumstances that support an inference of discrimination. *Blizzard*, 698 F.3d at 283; *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990). An allegation that the plaintiff was replaced by a younger individual supports an inference of discrimination if the difference in age is significant, *Blizzard*, 698 F.3d at 283, or if the younger employee was outside of the protected class, *see Geiger*, 579 F.3d at 622. "[A]n age difference of ten or more years is generally considered significant." *Blizzard*, 698 F.3d at 284.

Here, Anderson has offered sufficient evidence to establish that she was over 40 years old when she was discharged, that she was qualified for the job in question, and that she was subjected to an adverse employment action. (*See, e.g.*, Pl.'s Dep. at 8, 18–45, 77.) U.S. Bank does not dispute these elements of Anderson's prima facie case.

U.S. Bank does, however, contend that Anderson cannot establish the fourth element of her prima facie case—that circumstances exist to support an inference of age discrimination. (Mot. for Summ. J. at 5 [ECF No. 20].) U.S. Bank focuses on Doutt and Ficken's retirement comments, arguing that those comments are either irrelevant—with respect to Ficken's statements—or isolated and ambiguous—with respect Doutt's statements. (*Id.* at 5–6.) This argument misses the mark.

Anderson does not build her prima facie case on Doutt and Ficken's retirement comments. Rather, Anderson establishes her prima facie case by offering evidence to prove that she was replaced by a younger employee. (Mem. in Opp'n to Mot. for Summ. J. at 15–16 [ECF No. 23].) In the Sixth Circuit, "[a] person is replaced only when another employee is hired or

reassigned to perform the plaintiff's duties." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Anderson was 65 years old and a Teller 2 when she was fired. (Doutt Dep. at Ex. 2; Pl.'s Dep. at 8.) At about the same time that Anderson was fired, another Teller 2 at the Cambridge East branch was also terminated. (*See* Doutt Dep. at 24, Exs. 31, 32; Swank Aff. at PageID 555 [ECF No. 23-1].) So there were two open Teller 2 positions. U.S. Bank filled one of those positions on June 30, 2014 with a 47-year-old. (Doutt Dep. at Ex. 32.) U.S. Bank filled the second Teller 2 position on January 1, 2015 with a 44-year-old. (*Id.*) Either of these new employees could have been hired to perform Anderson's duties, as each replacement employee was hired as a Teller 2, the same position that Anderson had occupied. *See Barnes*, 896 F.2d at 1465. The question remaining, then, is whether the age difference between Anderson and the replacement tellers is significant enough to support an inference of discrimination. Here, the age difference—18 years and 21 years—is sufficiently significant, and, thus, an issue of material fact exists as to whether there are circumstances that support an inference of age discrimination. *Cf. Blizzard*, 698 F.3d at 283–84.

To show that she was replaced by a younger employee, Anderson relies heavily on Exhibit 32 of Doutt's deposition. Exhibit 32 lists the individuals employed at the Cambridge East branch. (*See* Doutt Dep. at Ex. 32.) Under each employee, Exhibit 32 lists her date of birth, her position, and her hire date, among other pieces of information. (*See id.*) U.S. Bank asserts that this exhibit is insufficient to establish Anderson's prima facie case. U.S. Bank is incorrect though. "[T]he requirement that a plaintiff establish a prima facie case of age discrimination is not intended to be an onerous one." *Loyd*, 766 F.3d at 590. And Exhibit 32 offers sufficient evidence for a reasonable jury to find in Anderson's favor on whether circumstances exist to support an inference of age discrimination.

12

### 2.    Nondiscriminatory Reason for the Discharge

Given that Anderson can establish a prima facie case of age discrimination, the burden shifts to U.S. Bank to articulate some legitimate, nondiscriminatory reason for its decision to fire Anderson. U.S. Bank has offered such a reason: that Anderson was fired because she gamed the incentive system in violation of § 3.3.3 of the Code of Ethics by "manipulat[ing] records." (*See* Doutt Dep. at 17–19; Hamilton Dep. at 30–31.)

### 3.    Pretext

Because U.S. Bank has articulated a nondiscriminatory reason for firing Anderson, the burden of production shifts back to Anderson to demonstrate that U.S. Bank's proffered reason is a pretext for age discrimination. "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." *Id.* If the plaintiff has produced this evidence, summary judgment is inappropriate. *See Bennett v. Bd. of Educ. of Washington Cnty. Joint Vocational Sch. Dist.*, 785 F. Supp. 2d 678, 688 (S.D. Ohio 2011).

Plaintiffs usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). Although these categories often provide "a convenient way of marshaling evidencing," there is no requirement that a plaintiff's arguments fit neatly within one of the categories. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012); *see Blizzard*, 698

13

F.3d at 285. Anderson advances a range of arguments to demonstrate that U.S. Bank's proffered reason for firing her was pretextual.

      **a.**     **No Basis in Fact**

Anderson raises two arguments to show that U.S. Bank's reason for firing her has no basis in fact. For her first argument, Anderson asserts that Code of Ethics § 3.3.3 includes an intent requirement. (Mem. in Opp'n to Mot. for Summ. J. at 21–22 [ECF No. 23].) Assuming that § 3.3.3 includes an intent requirement, Anderson insists that she could not have violated the section; she claims that she did not enter the erroneous referral with the intention of gaming the incentive system. (*See id.* at 22–23.) Anderson interprets an intent requirement into § 3.3.3 because (i) Doutt interprets the section as only prohibiting intentional conduct, (ii) U.S. Bank has, on several occasions, referred to Anderson's conduct as "incentive *fraud*," and (iii) § 3.3.3 prohibits employees from "*manipulate[ing]* records." (*See id.* at 21–22 (emphasis added).)

Viewing the evidence in the light most favorable to Anderson, the Court assumes that § 3.3.3 includes an intent requirement and that Anderson did not enter the referral with the intention of gaming the incentive system. But even with these assumptions in place, Anderson's argument still fails to undermine the factual basis of U.S. Bank's decision. Critically, Doutt fired Anderson based on his belief (i) that § 3.3.3 *did include* an intent requirement and (ii) that Anderson *intentionally* entered the referral in order to game the incentive system. (Doutt Dep. at 18, 69 ("Q. So do you believe that [Anderson] intentionally put in a referral in order to - -  A. Yes.") ("Q. Okay. So intent was included?  A. Uh-huh.").) As Anderson highlights, Doutt and Hamilton appear to hold differing interpretations of § 3.3.3. (Mem. in Opp'n to Mot. for Summ. J. at 21–23.) Hamilton may not believe that § 3.3.3 includes an intent requirement. (*See id.* at 6.) But this potential disagreement does not undermine the factual basis of U.S. Bank's decision

because, as noted above, Doutt made the decision to fire Anderson based on his belief that §

3.3.3 includes an intent requirement. (Doutt Dep. at 18, 69; *see also* Pl.'s Dep. at 77 ("And

Dennis [Doutt] said, no, this means immediate termination. And that – that was the end of the

meeting.").) And although Doutt would "never make a termination . . . decision . . . without HR's

*interaction*," Anderson has not submitted any evidence to suggest that Hamilton, the HR

representative, could have overruled Doutt's decision if Hamilton had determined that

Anderson's conduct did not satisfy § 3.3.3's purported intent requirement. (*See* Doutt Dep. at 12,

17 (emphasis added).) Anderson, in other words, has not produced evidence from which a jury

could reasonably find that she would not have been fired if both Doutt and Hamilton had

interpreted § 3.3.3 to include an intent requirement.

      For her second argument, Anderson contends that an employee must benefit in order to

violate Code of Ethics § 3.3.3. (Mem. in Opp'n to Mot. for Summ. J. at 23; Pl.'s Dep. at Ex. 11

("You may not manipulate records . . . in any way *for the benefit of yourself or other employees*."

(emphasis added)).) To benefit under § 3.3.3 for entering an erroneous referral, Anderson implies

that an employee must reach the incentive pay threshold as a result of the referral. (Mem. in

Opp'n to Mot. for Summ. J. at 23.) Because she did not reach the incentive pay threshold (12

referrals) as a result of the erroneous referral, Anderson claims that she could not have violated §

3.3.3. (*See id.*)

      Hamilton has acknowledged that § 3.3.3 includes a benefit requirement. (Hamilton Dep.

at 32–33.) Under his interpretation though, employees can violate § 3.3.3 if "they *could have*

*benefited*" from a referral; employees need not "actually benefit[]" to violate the policy. (*See id.*)

Under Hamilton's interpretation, an employee appears to "actually benefit[]" from a referral only

if the employee reaches the incentive pay threshold as a result of the referral. (*See id.* at 27–28,

32–33.) As to Anderson's conduct, Hamilton testified that she may "[p]ossibly" have benefited if the erroneous referral caused her to meet "her threshold per the incentive plan, the gateway number of 12." (*See id.* at 27–28.) Doutt also appears to believe that § 3.3.3 includes a benefit requirement. (*See* Doutt Dep. at 69.) Doutt, however, seems to view a referral as a benefit even if the employee does not reach the incentive pay threshold as a result of the referral. (*See id.* at 18–19, 30–31, 69.) According to Doutt, Anderson benefited from the referral. (*Id.* at 18, 30–31, 69.)

Viewing § 3.3.3 and Hamilton and Doutt's depositions in the light most favorable to Anderson, a jury could reasonably conclude that under § 3.3.3 an employee only benefits from entering an erroneous referral if the employee reaches the incentive pay threshold as a result of the referral. (*See* Pl.'s Dep. at Ex. 11.) And, thus, a jury could reasonably conclude that because Anderson did not "benefit" from the erroneous referral, U.S. Bank's reason for firing Anderson lacks a basis in fact.

This determination would normally defeat a motion for summary judgment. But here, U.S. Bank invokes the honest belief rule. The rule applies when "the defendant's proffered reason appears 'mistaken, foolish, trivial, or baseless.'" *Clay v. UPS, Inc.*, 501 F.3d 695, 715 (6th Cir. 2007) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)); *Bennett*, 785 F. Supp. 2d at 689. The rule is, in effect, "one last opportunity for the defendant to prevail on summary judgment. The defendant may rebut the plaintiff's evidence of pretext[] by demonstrating that the defendant's actions . . . were not taken with discriminatory intent." *Id.* at 714–15. Under the honest belief rule, "'[f]or an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" *Bennett*, 785 F. Supp. 2d at 688 (internal quotation marks omitted) (quoting *Wright v. Murray*

*Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006)). In this analysis, the key inquiry "'is whether the employer made a reasonably informed and considered decision before taking the complained-of-action.'" *Tingle*, 692 F.3d at 531 (internal quotation marks omitted) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007)).

Here, the Court cannot conclude that U.S. Bank made a reasonably informed and considered decision when it decided to fire Anderson. Doutt and Hamilton allegedly fired Anderson for her violation of Code of Ethics § 3.3.3. And as Doutt and Hamilton admit, an employee only violates that section if she engages in conduct "for [her] benefit." (Pl.'s Dep. at Ex. 11; *see* Doutt Dep. at 69; Hamilton Dep. at 32–33.) Despite recognizing § 3.3.3's benefit requirement, Doutt and Hamilton did not review their records to determine whether Anderson would have reached her incentive pay or referral bonus thresholds as a result of the erroneous referral. (*See* Doutt Dep. at 61; Hamilton Dep. at 28.) The decision not to review Anderson's referral data is especially problematic given that Hamilton appears to believe that an employee can "actually benefit[]" from a referral only if the employee reaches the incentive pay threshold as a result of the referral. (*See* Hamilton Dep. at 27–28, 32–33.) An employer's decisional process need not be optimal, but it does need to be reasonably informed. *See Tingle*, 692 F.3d at 531. And here, given that Doutt and Hamilton disregarded readily available and potentially critical information as to whether Anderson would benefit from the erroneous referral, U.S. Bank's decisional process was not reasonably informed. The honest belief rule does not apply. And a genuine issue of material fact exists as to whether U.S. Bank's reason for firing Anderson lacks a basis in fact and is, thus, pretextual.

### b.      Not the Actual Reason

Anderson presents several arguments that, taken together, purportedly demonstrate that her entry of an erroneous referral was not the actual reason for her discharge. When attempting to establish pretext under a "not the actual reason" argument, "'the plaintiff attempts to indict the credibility of [her] employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant.'" *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 396 (6th Cir. 2008) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The plaintiff, in other words, "'argues that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup.'" *Id.* (quoting *Manzer*, 29 F.3d at 1084).

According to Anderson, pretext is circumstantially demonstrated in this case by (i) the frequent questions from Anderson's supervisors regarding Anderson's retirement plans, (ii) the relative harmlessness of Anderson's conduct (i.e., Anderson would not have received incentive pay or a referral bonus as a result of the erroneous referral, and Anderson's conduct did not involve any negative customer interactions), and (iii) Doutt and Hamilton's disagreement on whether Code of Ethics § 3.3.3 includes an intent requirement. (Mem. in Opp'n to Mot. for Summ. J. at 17–20, 25–26 [ECF No. 23].)

U.S. Bank challenges each of these pretext arguments. After considering U.S. Bank's challenges, the Court will consider whether a jury, viewing the entirety of Anderson's circumstantial evidence in the light most favorable to her, could reasonably doubt U.S. Bank's proffered nondiscriminatory explanation.

### i.      *Retirement Comments*

U.S. Bank begins by attacking the relevance of Doutt and Ficken's retirement comments.

18

(*See* Reply in Support of Mot. for Summ. J. at 5 [ECF No. 24].) Ficken is a "nondecisionmaker,"

U.S. Bank observes. (*Id.*) This is true. But statements by nondecisionmakers are only insufficient

to prove pretext if those statements are standing alone. *See E.E.O.C. v. Ford Motor Co.*, 782 F.3d

753, 768 (6th Cir. 2015); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th

Cir. 1998) ("Although discriminatory statements by a nondecisionmaker, standing alone,

generally do not support an inference of discrimination, the comments of a nondecisionmaker are

not categorically excludable."); *see also Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th

Cir. 2009) ("We have held that discriminatory remarks, even by a nondecisionmaker, can serve

as probative evidence of pretext."). And here, Anderson has offered various arguments in

conjunction with Ficken's statements. In evaluating statements by nondecisionmakers, "courts

must carefully evaluate factors affecting the statement's probative value, such as 'the declarant's

position in the corporate hierarchy, the purpose and content of the statement, and the temporal

connection between the statement and the challenged employment action.'" *Ercegovich*, 154

F.3d at 357 (quoting *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997)).

Applying these factors to Ficken's retirement comments reveals that the comments are

only minimally probative of pretext. Ficken was Anderson's branch manager, but he left U.S.

Bank at least a month before Doutt and Hamilton began investigating the referral issues at

Cambridge East. Thus Ficken made all of his comments to Anderson at least a month, and up to

five years, before Anderson was fired. Perhaps most importantly though, all but one of Ficken's

purported discriminatory comments simply involved inquiries into Anderson's possible

retirement. And "inquiries into retirement plans do not generally constitute evidence of

discrimination" in the Sixth Circuit. *MacDonald v. UPS*, 430 F. App'x 453, 460 (6th Cir. 2011);

*Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (concurring with the district court

that questions about an employee's plans for the future "do not amount to evidence that [the employee's] age was the reason for his departure from [the company]"). Although Ficken's prodding into Anderson's retirement plans may have been more frequent than usual, courts have typically only found retirement queries to constitute evidence of discrimination when the questioning is egregious or incorporates some type of direct reference to age. *See Woythal*, 112 F.3d at 247 (collecting cases). Finally, Ficken once stated that it would be easier to train "a younger employee base." (Pl.'s Dep. at 36–37.) That comment, however, is too temporally removed and too ambiguous to establish pretext. *Cf. Doucet v. Univ. of Cincinnati*, No. 06-4118, 2007 WL 2445993, at *6 (6th Cir. Aug. 28, 2007).

Doutt's retirement comments, U.S. Bank argues, were "unconnected to the decisionmaking process." (Reply in Support of Mot. for Summ. J. at 5 (citing *Ford Motor Co.*, 782 F.3d at 768).) Doutt did not ask Anderson about retirement during his referral investigation—true. But the fact that a decisionmaker does not simultaneously make adverse employment decisions and potentially discriminatory comments does not render his comments irrelevant to a pretext analysis. *Cf. Ford Motor Co.*, 782 F.3d at 768 (determining that an individual was a nondecisionmaker and "outside of the decisionmaking process" given that he "was *on vacation*" and that "no one at Ford [had] consulted with him or received a recommendation from him before making [the] termination decision"). More important is the content of the statements. Doutt, like Ficken, regularly asked Anderson about her retirement plans. And, as explained above, inquiries into retirement plans do not generally constitute evidence of discrimination in the Sixth Circuit. *See, e.g.*, *MacDonald*, 430 F. App'x at 460. Doutt's retirement comments are, like Ficken's, minimally probative of pretext.

### ii.  *Relative Harmlessness of the Conduct*

Anderson was a 43-year employee who, as she puts it, "stood to gain nothing from the referral error" and who committed one mistake "that caused no harm or benefit to anyone." (Mem. in Opp'n to Mot. for Summ. J. at 25–26.) As U.S. Bank urges though, regardless of how harmless Anderson's mistake might seem, or how draconian the reaction may appear, the Court should defer to the bank's business judgment. (Reply in Support of Mot. for Summ. J. at 13.) This argument is not well taken. At the pretext phase of the *McDonnell* analysis, the Court does not defer to an employer's business judgment. Rather, the Court determines through a commonsense inquiry whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's proffered explanation for the adverse employment action. *See Chen*, 580 F.3d at 400 n.4.

### iii.  *Disagreement Between Decisionmakers*

Doutt and Hamilton disagree as to whether Code of Ethics § 3.3.3 includes an intent requirement. This disagreement, Anderson insists, demonstrates that U.S. Bank's proffered reason for her discharge is pretextual. (*See* Mem. in Opp'n to Mot. for Summ. J. at 26 (citing *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997) (finding that inconsistent, contradictory, and unbelievable supervisor statements regarding an employee's discharge created a genuine issue of material fact on what "caused [the decisionmaker] to decide that [the employee] should be fired")).) U.S. Bank attempts to invoke the honest belief rule. The rule is inapplicable here though. Anderson does not directly attack U.S. Bank's proffered reason as mistaken, foolish, trivial, or baseless. *Cf. Clay*, 501 F.3d at 715. Instead, Anderson argues that Doutt and Hamilton's disagreement provides circumstantial evidence of pretext. *Cf. Allen*, 545 F.3d at 396 (Under the "not the actual reason" argument, "'[t]he plaintiff's attack on the

credibility of the proffered explanation is . . . an indirect one.'" (quoting *Manzer*, 29 F.3d at 1084)).

The Court looks now to the entirety of this circumstantial evidence to determine whether its sheer weight could support a jury finding of pretext. Doutt and Ficken's retirement comments are not especially probative of pretext, as noted above. The disagreement between Doutt and Hamilton over § 3.3.3's intent requirement is slightly more probative. What, exactly, the correlation is between Doutt and Hamilton's disagreement over the interpretation of § 3.3.3, on the one hand, and U.S. Bank's purported concealment of age discrimination through a pretext of incentive gaming, on the other, still remains somewhat unclear though. Nonetheless, the relative harmlessness of Anderson's conduct carries the day. It is, based on the Court's commonsense inquiry, highly probative of pretext. Viewing all of the circumstantial evidence outlined in this section as a whole, and in the light most favorable to Anderson, a jury could reasonably doubt U.S. Bank's proffered explanation of why it fired Anderson. A genuine issue of material fact exists here.

### c.    Insufficient Explanation

Anderson asserts that U.S. Bank's proffered explanation is pretextual because it is insufficient to motivate her discharge. She offers two insufficiency arguments.

First, Anderson contends that the Incentive Plan Provisions "do[] not include any mention of terminating employees' employment for a violation of the plan or the U.S. Bank Code of Ethics." (Mem. in Opp'n to Mot. for Summ. J. at 24 [ECF No. 23].) The Plan Provisions, Anderson insists, only provide for the employee to be determined "ineligible to participate in the incentive plan in part or in full." (*Id.*) Granted, the Incentive Plan Provisions do not indicate that an employee can be terminated for violating the Code of Ethics. (Pl.'s Dep. at

Ex. 12.) But that is beside the point. U.S. Bank claims to have terminated Anderson because she violated the Code of Ethics, not the Plan Provisions. (*See* Doutt Dep. at 17–19; Hamilton Dep. at 30–31.) And the Code of Ethics explicitly states that employees who violate the code may face discipline "up to and including termination." (Pl.'s Dep. at Ex. 11.) Nothing in either document suggests that the Plan Provisions supersede the Code of Ethics. (*See generally id.* at Exs. 11, 12.) Rather, the Plan Provisions specifically state that "[p]articipation in a[n] [incentive plan] . . . shall not affect the right of [U.S. Bank] to discharge, transfer, or change the position of a participant. Except where prohibited by law, the employment of any person participating in [an incentive plan] may be terminated at any time . . . ." (*Id.* at Ex. 12.) Anderson's first argument fails to demonstrate the insufficiency of U.S. Bank's proffered explanation.

Anderson's second argument is more successful. Younger tellers, Anderson asserts, were engaged in conduct comparable to hers. (Mem. in Opp'n to Mot. for Summ. J. at 20.) But whereas she was fired, the younger tellers were not even disciplined. (*Id.*) U.S. Bank challenges this argument. Anderson has not offered sufficient evidence to establish that the younger employees were similarly-situated to her, U.S. Bank contends. (Reply in Support of Mot. for Summ. J. at 8 [ECF No. 24].) It also contends that the younger employees' conduct was purportedly "not 'of comparable seriousness'" to Anderson's conduct. (*Id.* at 8–9 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992)).)

"To establish the insufficiency of [an employer's] proffered reasons, [the plaintiff] must show by a preponderance of the evidence that 'other employees, particularly employees not in the protected class, were not fired even though they were engaged in substantially identical conduct to that which the employer contends motivated its discharge of [the plaintiff].'" *Blizzard*, 698 F.3d 275, 286–87 (quoting *Manzer*, 29 F.3d at 1084). To be deemed similarly-

situated, the plaintiff and her proposed comparators must "'[1] [have] dealt with the same supervisor, [2] have been subject to the same standards[,] and [3] have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). These three factors do not require a plaintiff to "demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather . . . the plaintiff and the [comparator] must be similar in 'all of the *relevant* aspects.'" *Ercegovich*, 154 F.3d at 352 (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

Through the depositions filed in this case, and the exhibits accompanying those depositions, Anderson has offered sufficient evidence to establish that the younger tellers at the Cambridge East branch were similarly-situated to her. Through their investigation, Doutt and Hamilton found that all of the tellers at Cambridge East were sharing referrals. (Doutt Dep. at 23–24.) At least two of these tellers—a 31-year-old Teller 2 and a 19-year-old Teller 1—were significantly younger than Anderson. (*See id.* at Ex. 32.) These tellers dealt with the same supervisor as Anderson did—Doutt—and were subject to the same standards as Anderson—the Code of Ethics and the Incentive Plan Provisions. (*See id.* at 9–13, 22–35 (indicating that he (Doutt) was the district manager for U.S. Bank in the Cambridge, Ohio, area, and that he conducted an investigation—rooted at least in part in the Code of Ethics and the Incentive Plan Provisions—into the referral practices of tellers at the Cambridge East branch); Pl.'s Dep. at Exs. 11, 12.)

24

The conduct engaged in by Anderson was different from the conduct engaged in by the younger tellers; nonetheless, all of the conduct was substantially identical. The younger tellers were sharing referrals. That is, they would direct incoming customers to co-workers who had not yet met their threshold for incentive pay or referral bonus eligibility. (*See* Hamilton Dep. at 12.) Anderson, by contrast, entered a referral for a customer with whom she had allegedly never spoken. (Doutt Dep. at 24–25; Hamilton Dep. at 14.) Both types of conduct could violate Code of Ethics § 3.3.3 and the Incentive Plan Provisions. (*See* Doutt Dep. at 24 (acknowledging that all of the tellers were violating the referral policy).) And although U.S. Bank insists that entering a referral for someone whom the teller did not talk to is a more serious violation than "sharing *actual* referrals," (Reply in Support of Mot. for Summ. J. at 8 [ECF No. 24]), U.S. Bank appears to disregard the consequences of each course of action. *Cf. Jackson*, 814 F.3d at 780 ("The relative severity of two actions is not determined solely by whether those actions violated the same company rule or policy. Instead, employers—and therefore courts—are free to consider both the actual and potential consequences of the employee's actions." (internal citations omitted)). Anderson's act of listing a referral for someone she allegedly never spoke with did not involve any negative interactions with customers, nor did it result in U.S. Bank paying a referral bonus or providing incentive pay. (*See* Doutt Dep. at Exs. 27, 29.) The younger tellers, by contrast, engaged in an ongoing practice of manipulating customer interactions so that they could each "[get] enough hits to get their incentive [pay]." (*See id.* at 23; Hamilton Dep. at 12–13.) This conduct was, as Hamilton admitted, not "great customer service," (Hamilton Dep. at 12), and it also likely resulted in U.S. Bank providing incentive pay to numerous tellers who might not have otherwise reached the referral threshold. In terms of consequences, the younger tellers' referral sharing may have actually been more serious than Anderson's conduct. In sum,

Anderson and the younger tellers all engaged in what could be considered incentive gaming—a violation of Code of Ethics § 3.3.3 and the Incentive Plan Provisions. No differentiating or mitigating circumstances exist that would distinguish Anderson and the younger tellers' conduct or that would distinguish U.S. Bank's treatment of them for that conduct.

Anderson and the younger tellers are similarly situated. And whereas the 65-year-old Anderson was fired, Anderson's younger colleagues faced no discipline. (Doutt Dep. at 19–20, 24.) This creates a genuine issue of material fact as to whether U.S. Bank's proffered reason for firing Anderson was insufficient and, thus, a pretext for age discrimination.

## IV. CONCLUSION

For the foregoing reasons, U.S. Bank's Motion for Summary Judgment [ECF No. 20] and Anderson's Motion for Leave to File a Surreply [ECF No. 25] are **DENIED**.

**IT IS SO ORDERED.**

_____                    _____  6-28-2016
**DATE**                                                **EDMUND A. SARGUS, JR.**
                                                       **CHIEF UNITED STATES DISTRICT JUDGE**